IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | | |
|---|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC., | : : : | |
| *Plaintiff,* | : : | |
| v. | : : | Case No. 4:21-CV-190 |
| LAUREL LEE, in her official capacity as FLORIDA SECRETARY OF STATE, | : : : : | |
| *Defendant.* | : : : | |

# COMPLAINT

This lawsuit challenges Florida's new law, Senate Bill 1890, which unconstitutionally abridges First Amendment freedoms of association and speech by limiting contributions to committees sponsoring statewide ballot initiatives. Plaintiff alleges as follows:

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 for declaratory and injunctive relief based on violations of the First Amendment to the U.S. Constitution. The action concerns the constitutionality of SB 1890, a bill passed by the Florida Legislature and signed into law by Governor Ron DeSantis on May 7, 2021.

2. Specifically, Plaintiff challenges the constitutionality of SB 1890's

$3,000 cap on contributions "to a political committee that is the sponsor of . . . a constitutional amendment proposed by initiative." Exh. A, Fla. CS for CS for SB 1890 (2021) (Enrolled).

3. That contribution limit unconstitutionally burdens and chills Plaintiff's free speech and association, as protected by the First Amendment.

## PARTIES

4. Plaintiff THE AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC. (ACLU of Florida) is the Florida affiliate of the national ACLU. The ACLU of Florida is a nonpartisan, nonprofit corporation organized under the laws of Florida, and a tax-exempt social welfare organization pursuant to section 501(c)(4) of the Internal Revenue Code.

5. The ACLU of Florida's mission is to protect, defend, strengthen, and promote the constitutional rights and liberties of all Floridians. To further its mission, the ACLU of Florida advocates for the expansion of voting rights and participation in elections, including through passage of citizen-initiated constitutional amendments.

6. Defendant LAUREL LEE is the Florida Secretary of State. The Department of State (DOS) has "general supervision and administration of the election laws." § 15.13, Fla. Stat.

7. As Florida's "chief election officer," the Secretary must "[o]btain and

maintain uniformity in the interpretation and implementation of the election laws." *Id.* § 97.012(1). She is responsible for ensuring state compliance with all election laws. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019) (citing Fla. Stat. § 97.012); *see also Ex parte Young*, 209 U.S. 123 (1908) (permitting injunctive relief against individual state officers in their official capacities).

8. The Secretary is also responsible for "[c]onduct[ing] preliminary investigations into any irregularities or fraud involving . . . issue petition activities" and "report[ing] . . . findings to the statewide prosecutor or the state attorney" for prosecution. § 97.012(15), Fla. Stat.

9. Additionally, the Division of Elections within DOS may refer complaints of violations of the campaign finance laws to the Florida Elections Commission for investigation and civil enforcement. *Id.* § 106.25(2).

## JURISDICTION AND VENUE

10. This case arises under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

12. This Court also has jurisdiction over Plaintiff's claim for a declaratory

3

judgment under 28 U.S.C. §§ 2201–02.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

14. This case is properly filed in this Division under Local Rule 3.1(B).

## FACTUAL ALLEGATIONS

### A. The Right of Initiative and Efforts to Restrict It

15. In 1968, the Florida voters adopted a constitutional amendment initiative procedure, giving Floridians "[t]he power to propose the revision or amendment of any portion or portions of [the] constitution by initiative." Art. XI, § 3, Fla. Const.

16. By forming a political committee, submitting the proposed amendment to the Secretary of State, collecting the requisite signatures, obtaining a favorable advisory opinion from the Florida Supreme Court, and securing voter approval, Floridians can amend the State Constitution directly when the Legislature fails to carry out the people's will. *Id.* art. XI, §§ 3, 5; §§ 16.061, 100.371, Fla. Stat.

17. In the half-century since the right of initiative was enshrined in the Constitution, Floridians have put 42 measures on the ballot for their fellow citizens' consideration. The voters have approved 32 of those.

18. Since voters advanced the first citizen initiative – the Sunshine Amendment, *see* art. II, § 8, Fla. Const. – in 1976, the Legislature has repeatedly constrained the initiative process by making it harder and costlier for Floridians to

4

propose a constitutional amendment and get it on the ballot.

19.     In 1976, the Legislature banned collecting petition signatures within 100 yards of any polling place.[1] Ch. 76-61, § 1, at 109, Laws of Fla. (amending § 104.36, Fla. Stat. (1975)).

20.     In 1977, the Legislature required sponsors to pay a verification fee of 10 cents per signature or the actual cost of verifying, whichever was less. Unlike *candidates* who could not afford the cost of verifying their candidate petitions, initiative sponsors who could not afford to pay could not file an "undue burden" oath to waive the fee.[2] Ch. 77-175, § 10, at 936–37, Laws of Fla. (amending § 99.097(4), Fla. Stat. (Supp. 1976)).

21.     The year after the second citizen initiative made the ballot in 1978, the Legislature required initiative sponsors to register as a political committee and submit their proposed amendment's text and ballot summary to the Secretary for approval before obtaining any signatures. Ch. 79-365, § 15, at 1857–58, Laws of Fla. (creating § 100.371(3), Fla. Stat. (1979)); *id.* § 16, at 1858 (amending § 101.161, Fla. Stat. (1977)).

---

[1]     Eight years later, the ban was struck down as unconstitutionally overbroad on its face. *Clean-Up '84 v. Heinrich*, 590 F. Supp. 928, 930 (M.D. Fla. 1984), *aff'd*, 759 F.2d 1511 (11th Cir. 1985).
[2]     Failing to offer an undue burden waiver for initiatives, while providing it to candidates, was struck down as a violation of equal protection in *Clean-Up '84*. *Id.* at 932.

22. That same year, the Legislature granted the Secretary rulemaking authority to prescribe the format of petition forms. *Id.* § 15, at 1857–58 (creating § 100.371(3), Fla. Stat. (1979)). Following the first two initiatives' use of ruled-lined petition forms where multiple voters could sign on a single sheet of paper, the Secretary required a separate card or sheet of paper for each signature. Fla. Admin. Code R. 1C-7.09 (1979) (now R. 1S-2.009 (2020)).

23. In 1980, the Legislature limited ballot summaries to 75 words, while requiring initiative sponsors to explain the amendment's chief purpose within that word limit. Ch. 80-305, § 2, at 1342–43, Laws of Fla. (amending § 101.161, Fla. Stat. (1979)).

24. In 1983, the Legislature set a four-year expiration date on initiative petition signatures. Ch. 83-251, § 12, at 1295, Laws of Fla. (amending § 100.371(2), Fla. Stat. (1981)).

25. In 1986, the year the third and fourth initiatives appeared on the ballot, the Legislature referred to the voters and the voters approved a constitutional amendment mandating automatic Supreme Court review of initiatives (but not legislatively referred amendments) for compliance with the Constitution's single-subject rule and statutory ballot summary and title requirements, once an initiative obtained ten percent of the total signatures needed for ballot status. Fla. HJR 71 (1986), at 2281–83, Laws of Fla. (codified at art. IV, § 10, and art. V, § 3(b)(10),

Fla. Const.); *see also* ch. 87-363, §§ 1–2, at 2236–37, Laws of Fla. (creating §§ 15.21 and 16.061, Fla. Stat. (1987)).

26. In 1990, the Legislature passed, but the Governor vetoed, a bill to require petition signatures to be witnessed and to prohibit paying petition circulators per-signature. Fla. CS for SB 870 (1990).

27. In 1991, the Legislature again passed, and the Governor vetoed, a bill to prohibit paying petition circulators per-signature. Fla. HB 1809 (1991).

28. In 1997, the year after three Everglades conservation initiatives appeared on the ballot, the Legislature enacted a law:

   a. requiring initiative sponsors to pay the signature-verification fee in advance;

   b. requiring sponsors to file an affidavit with the Division of Elections of their intent to use paid petition circulators;

   c. requiring sponsors to provide to the Division the name and address of each individual paid to circulate petitions;

   d. requiring paid circulators to write their name and address on each petition form they circulate;

   e. revoking a sponsor's undue-burden exemption for the signature-verification fee if the sponsor uses paid circulators; and

   f. moving the signature submission deadline up from 90 days before the

>general election to 121 or 151 days before, depending on the signature verification method used.

Ch. 97-13, § 21, at 29, Laws of Fla. (amending § 99.097(4), Fla. Stat. (1995)); *id.* § 22, at 29–30 (amending § 100.371, Fla. Stat. (1995)).

29.   In 2002, a year in which voters approved initiatives requiring the State to offer universal pre-kindergarten and reduce classroom sizes, the Legislature tasked the Revenue Estimating Conference with writing a fiscal impact statement for each initiative, stating the initiative's estimated impact on state and local government's revenues and costs. The statement would appear on the ballot after the initiative's summary. Ch. 2002-390, Laws of Fla. (amending §§ 15.21, 16.061, 100.371, 101.161, and 216.136, Fla. Stat. (2001)).

30.   In 2005, the Legislature moved up by five months, to February 1, the deadline by which an initiative must attain the requisite petitions to be placed on that year's general election ballot (more than nine months later). Ch. 2005-278, § 28, at 33, Laws of Fla. (amending § 100.371(1), Fla. Stat. (2004)).

31.   In 2006, less than two years after the Florida Supreme Court rejected three different initiative financial impact statements for violating the statutory requirements, the Legislature purported to make the President of the Senate and Speaker of the House "the sole judge for the interpretation, implementation, and

8

enforcement" of the provisions regarding initiatives' financial impact statements.[3] Ch. 2006-119, § 4, at 5, Laws of Fla. (amending § 100.371(c), Fla. Stat. (2005)); *see In re Advisory Op. to Att'y Gen. re Authorizes Miami-Dade & Broward Cty. Voters to Approve Slot Machs. in Parimutuel Facilities*, 880 So.2d 689 (Fla. 2004); *In re Advisory Op. to Att'y Gen. re Pub. Prot. from Repeated Med. Malpractice*, 880 So. 2d 686 (Fla. 2004); *Advisory Op. to Att'y Gen. re Repeal of High Speed Rail Amend.*, 880 So. 2d 628 (Fla. 2004).

32. In 2007, the Legislature required petitions to accurately set forth a voter's street address, county, and voter registration number or date of birth to be verified as valid; and permitted voters to revoke their signatures after signing.[4] Ch. 2007-30, § 25, at 20–21, Laws of Fla. (amending § 100.371, Fla. Stat. (2006)).

33. In 2008, shortly after FairDistrictsNow.org launched a campaign to place the two Fair Districts Amendments on the 2010 ballot, the Legislature prohibited a petition form from being bundled with or attached to any other petition. Ch. 2008-95, § 14, at 16, Laws of Fla. (amending § 100.371, Fla. Stat. (2007)).

34. In 2011, following the voters' approval of the Fair Districts Amendments, the Legislature cut the signature expiration date in half, from four to

---

[3] Notwithstanding this, the Supreme Court continued to review financial impact statements for compliance with the statutory requirements until 2019. *Advisory Op. to Att'y Gen. re Raising Fla.'s Minimum Wage*, 285 So. 3d 1273, 1277 (Fla. 2019)

[4] The signature-revocation provision was repealed in 2011. Ch. 2011-40, § 23, at 30–32, Laws of Fla. (amending § 100.371, Fla. Stat. (2010)).

9

two years, and abolished the cheaper "random sampling" method for signature verification of initiative petitions, while keeping random sampling for verification of *candidate* petitions. Ch. 2011-40, § 19, at 25, Laws of Fla. (amending § 99.097(1), Fla. Stat. (2010)); *id.* § 23, at 30 (amending § 100.371(3), Fla. Stat. (2010)).

35. In 2019, after voters approved the 2018 Voter Restoration Amendment, the Legislature enacted a stringent regulatory scheme for paid petition circulators, including:

    a. banning paying circulators per-signature;

    b. requiring paid circulators to register with the Secretary;

    c. requiring paid circulators to file an affidavit with each petition they collect;

    d. requiring paid circulators to use only individualized forms issued to them by the Division of Elections or supervisors of elections;

    e. establishing fines for petitions not delivered to the supervisor of elections within 30 days.

Ch. 2019-64, § 3, at 4–6, Laws of Fla. (amending § 100.371, Fla. Stat. (2018))

The Legislature also added a bold-font statement below an initiative's ballot summary if the initiative was estimated to increase costs, decrease revenues, have a negative impact on the state or local economy, or have an indeterminate impact for

Case 4:21-cv-00190-AW-MJF   Document 1   Filed 05/08/21   Page 11 of 18

any of those.[5] *Id.* at 8.

 36. In 2020, the Legislature enacted additional strict regulations:

  a. more than doubling the signature threshold for Supreme Court review;

  b. requiring the Supreme Court to review initiatives for facial validity under the U.S. Constitution;

  c. creating a private right of action to challenge a petition circulator's registration;

  d. providing that signatures can only be collected within a two-year window ending on February 1 of the general election year;

  e. doubling the amount of time supervisors have to verify signatures;

  f. requiring sponsors to pay for the actual cost of signature verification, whether or not that is more than the standard 10-cent fee still afforded to *candidate* petitions;

  g. voiding signatures collected by circulators who were not validly registered when the signature was collected; and

  h. mandating that certain financial impact statements be printed on the ballot in bolded, capital letters.

Ch. 2020-15, § 1, at 2 (amending § 15.21, Fla. Stat. (2019)); *id.* § 2, at 2 (amending

---

[5] The statement regarding the impact on the state or local economy was repealed in 2020. Ch. 2020-15, § 3, at 4–5 (amending § 100.371, Fla. Stat. (2019)).

11

§ 16.061(1), Fla. Stat. (2019)); *id.* § 3, at 2–3 (amending § 100.371(3) and (11), Fla. Stat. (2019)); *id.* § 4, at 7–8 (amending § 101.161(1), Fla. Stat. (2019)).

37. In April 2020, in response to the coronavirus pandemic, the Secretary issued an emergency rule permitting electronic or remote-signed signatures for *candidate* petitions – but not for *initiative* petitions. 46 Fla. Admin. Reg. 1415, R. 1SER20-2 (Apr. 3, 2020).

38. On March 15, 2021, the Division of Elections responded to a 31-month-old advisory opinion request by the ACLU of Florida, opining that a voter's "original signature" on an initiative petition must be a wet-ink signature signed directly onto the paper by the voter. Op. Fla. Div. of Elections DE 21-01 (2021) (citing § 100.371(11)(a), Fla. Stat.).

39. Finally, on April 26, 2021, the Legislature passed SB 1890.

40. Cumulatively, these restrictions and regulations make it extremely expensive to collect the requisite signatures, defend an initiative at the Florida Supreme Court, and secure ballot status for a citizen-initiated constitutional amendment.

### B. Senate Bill 1890

41. On May 7, 2021, Governor Ron DeSantis signed SB 1890 into law.

42. SB 1890 amends § 106.08, Florida Statutes, to impose a $3,000 limit on the contributions that individuals may make to a committee sponsoring a state

ballot initiative, effective July 1, 2021.

43. SB 1890 imposes the same limit on contributions to committees opposing an initiative.

44. SB 1890's limit applies until the initiative obtains the requisite 891,589 signatures for ballot placement and receives a certificate of ballot position from the Secretary. *See* Art. XI, § 3, Fla. Const. (requiring an initiative petition to be signed by a number of voters equal to eight percent of the votes cast in the last presidential election); § 100.371(12), Fla. Stat.

45. Knowingly and willfully making or accepting a single contribution over SB 1890's limit is a first-degree misdemeanor, punishable by up to one year of imprisonment and a $1,000 fine. §§ 106.08(7)(a), 775.082(4)(a), 775.083(1)(d), Fla. Stat.

46. For a natural person to knowingly and willfully make or accept more than one contribution over SB 1890's limit is a third-degree felony, punishable by up to five years of imprisonment and a $5,000 fine. *Id.* §§ 106.08(7)(b), 775.082(3)(e), 775.083(1)(c).

47. For a corporation or political committee, the offense is punishable by a fine of at least $10,000 and up to $50,000, and the entity may be ordered dissolved or have its right to do business in the state forfeited. *Id.* § 106.08(7)(b).

48. Additionally, any person who knowingly and willfully makes or

accepts a contribution over SB 1890's limit must pay a fine equal to twice the amount of the illegal contribution. *Id.* § 106.08(8).

49. Furthermore, a political committee's officer, agent, or employee who accepts a contribution over SB 1890's limit is subject to a civil penalty equal to three times the amount of the illegal contribution, whether or not they do so knowingly and willfully. *Id.* § 106.19(2).

### C. The ACLU of Florida's Support for Ballot Initiatives

50. The ACLU of Florida advocates for the expansion of voting rights and participation of elections through passage of citizen-initiated constitutional amendments.

51. In furtherance of that goal, the ACLU of Florida supported 2018 Amendment 4, the Voter Restoration Amendment, which restored voting rights to returning citizens after they served their felony sentences.

52. Between October 31, 2014 – when the Voter Restoration Amendment was approved for petition circulation – and December 31, 2017, the ACLU of Florida donated more than $3,000 to the sponsoring committee, Floridians for a Fair Democracy, in the form of staff time and supplies devoted to signature petition collection to put Amendment 4 on the ballot.

53. Under SB 1890, those in-kind contributions to Floridians for a Fair Democracy would have been illegal. *See* § 106.011(5)(a), Fla. Stat. (defining

"contribution" as a "distribution of money or anything of value, including contributions in kind having attributable monetary value in any form, made for the purposes of influencing the results of an election or making an electioneering communication").

54. Floridians for a Fair Democracy, the ACLU of Florida, and the voter restoration coalition's efforts were successful; Amendment 4 was certified for the 2018 ballot on January 23, 2018 and approved by 65% of the voters in the November 2018 election.

55. Since 2018, the ACLU of Florida has developed plans for other ballot initiatives to expand voter participation in Florida.

56. The ACLU of Florida has plans to propose and support pro-democracy initiatives in future election cycles, including through in-kind and monetary contributions over SB 1890's limit.

57. Because of the immense expense of collecting over 800,000 signatures and defending an initiative at the Florida Supreme Court, SB 1890's contribution limit has chilled the ACLU of Florida's efforts to develop initiatives for the future.

58. If SB 1890 stands, the ACLU of Florida will not be able to propose and support future initiatives, because such initiatives will not be viable under SB 1890's contribution limit.

## CLAIM FOR RELIEF

### COUNT ONE

### First Amendment to the U.S. Constitution, as Enforced by 42 U.S.C. § 1983 Undue Burden on Free Speech and Associational Rights

59. Plaintiff re-alleges and incorporates by reference each allegation in the preceding paragraphs as though fully set forth herein.

60. Plaintiff has a First Amendment right to speak, associate, make political contributions, and act collectively with others to advance political ideas and circulate initiative petitions. *Randall v. Sorrell*, 548 U.S. 230, 246 (2006); *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 295–96 (1981); *Buckley v. Valeo*, 424 U.S. 1, 15, 23, 65–66 (1976); *Let's Help Fla. v. McCrary*, 621 F.2d 195, 199 (5th Cir. 1980), *aff'd sub nom. Firestone v. Let's Help Fla.*, 454 U.S. 1130 (1982).

61. The State has "no significant state or public interest in curtailing debate and discussion of a ballot measure," including by limiting contributions to ballot initiative sponsors. *Citizens Against Rent Control*, 454 U.S. at 299; *see also McCrary*, 621 F.2d at 199.

62. SB 1890's contribution limit unduly burdens free speech and association, operating as a denial of Plaintiff's First Amendment rights in violation of 42 U.S.C. § 1983. *Citizens Against Rent Control*, 454 U.S. at 299–300; *McCrary*, 621 F.2d at 200.

63. By limiting Plaintiff's ability to pool resources and band together with others to advance citizen initiatives, SB 1890 unduly burdens Plaintiff's First Amendment right to associate with others.

64. By limiting Plaintiff's ability to give monetary and in-kind contributions to advance issues and circulate ideas relating to statewide ballot initiatives, SB 1890 unduly burdens Plaintiff's First Amendment right to free speech.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court grant the following relief:

A. Declare that the limit in § 106.08(1), Florida Statutes, as amended by SB 1890, on contributions to an initiative sponsor is unconstitutional in derogation of the First Amendment to the U.S. Constitution;

B. Preliminarily and permanently enjoin the State of Florida from enforcing § 106.08(1)'s limit on contributions to an initiative sponsor;

C. Award Plaintiff's attorneys' fees pursuant to 42 U.S.C. § 1988(b);

D. Award Plaintiff's costs; and

E. Any such other relief the Court deems just and proper.

Dated: May 8, 2021.

Respectfully submitted,

/s/ *Nicholas Warren*

Nicholas Warren (Fla. Bar No. 1019018)
Anya A. Marino (Fla. Bar No. 1021406)
Daniel B. Tilley (Fla. Bar No. 102882)
Max Gaston*
American Civil Liberties Union of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
nwarren@aclufl.org
amarino@aclufl.org
dtilley@aclufl.org
mgaston@aclufl.org

*Counsel for Plaintiff*

* *Pro hac vice* application forthcoming