IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THE AMERICAN CIVIL LIBERTIES
UNION OF FLORIDA, INC., et al.,

    Plaintiffs,

v.                                             Case No. 4:21-cv-190-AW-MJF

LAUREL LEE, in her official capacity as
FLORIDA SECRETARY OF STATE, et al.,

    Defendants.
_____/

## ORDER ON MOTIONS FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS

The Florida Legislature recently enacted a limit on contributions to any "political committee that is the sponsor of or is in opposition to a constitutional amendment proposed by initiative." Ch. 21-16, § 1, at 1, Laws of Fla. The issue in this case is whether the First Amendment permits such a limit. Plaintiffs—organizations wanting to give and receive contributions beyond that limit—contend that it does not, and they seek preliminary injunctive relief.

Plaintiffs rely principally on two cases that invalidated similar restrictions. In 1980, the Circuit Court of Appeals considered a Florida law that "restrict[ed] the size of contributions in a referendum election." *Let's Help Fla. v. McCrary*, 621 F.2d 195, 201 (5th Cir. 1980), *aff'd sub nom. Firestone v. Let's Help Fla.*, 454 U.S. 1130 (1982). The court concluded that Florida's restriction "abridge[d] important first

1

amendment rights," and it affirmed this court's injunction against the law's enforcement. *Id*. In the second case, the United States Supreme Court held invalid an ordinance that likewise limited contributions to political committees sponsoring ballot initiatives. *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 300 (1981). The Court concluded that "[c]ontributions by individuals to support concerted action by a committee advocating a position on a ballot measure is beyond question a very significant form of political expression." *Id.* at 298.

These decisions support Plaintiffs' request for injunctive relief. Having carefully considered the parties' arguments and the record, I conclude Plaintiffs have shown a substantial likelihood of success on the merits and have satisfied the other requirements for preliminary injunctive relief against the Florida Elections Commissioners.

As to the Secretary of State, however, I conclude Plaintiffs have not alleged facts to support standing, so this order dismisses the claim against the Secretary for lack of subject-matter jurisdiction.

## I.   BACKGROUND

The provision at issue—Senate Bill 1890—becomes effective today. Ch. 21-16, § 3, at 2, Laws of Fla. It limits to $3,000 the amount any "person or political committee may, in any election," contribute "to a political committee that is the

sponsor of or is in opposition to a constitutional amendment proposed by initiative." *Id.* § 1, at 1 (amending Fla. Stat. § 106.08(1)(a)). Immediately before this enactment, there were no limits on these contributions.

Plaintiffs are the ACLU of Florida, which supports certain citizen-initiative efforts to amend Florida's Constitution, and three political committees that support particular initiatives. The Secretary has approved the political committees' amendment petitions, and the committees have until February 2022 to collect nearly 900,000 signatures for each petition. ECF No. 10-1 (Latshaw Decl.) ¶ 10; ECF No. 10-2 (Shaw Decl.) ¶ 8.[1] Plaintiffs anticipate spending substantial dollars to gather enough signatures. Latshaw Decl. ¶¶ 10-11; Shaw Decl. ¶ 8.

The ACLU supports the political committees' petition initiatives, and it planned to contribute more than $3,000. But because of the new law and its associated penalties, the ACLU will limit its contributions to $3,000. Latshaw Decl. ¶¶ 14-16; ECF No. 23 (Dougherty Decl.) ¶¶ 7-11.

---

[1] Sara Latshaw, Sean Shaw, and Henri Spiegel testified at the hearing, affirming their respective declarations (ECF Nos. 10-1, 10-2, and 22). Terence Dougherty did not testify, but there have been no objections to his declaration (ECF No. 23). In any event, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials . . . if the evidence is appropriate given the character and objectives of the injunctive proceeding," *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (marks omitted), and I have considered the declarations accordingly.

Defendants are the Florida Secretary of State and members of the Florida Elections Commission.[2] The Secretary heads the Florida Department of State, which is tasked with the "general supervision and administration of the election laws." Fla. Stat. § 15.13. The Commission, an independent agency, investigates and assesses penalties for violations of Florida's campaign-finance laws, including Florida Statute § 106.08. Fla. Stat. §§ 106.24(1)(a), 106.25.

## II.  PLAINTIFFS LACK STANDING AS TO THE SECRETARY.

Before addressing the merits, I must consider whether Plaintiffs have standing. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) ("Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting."). Standing requires (i) an injury in fact that is (ii) traceable to and (iii) redressable by the defendant. *Id.*

Plaintiffs have shown enough injury-wise: they face a prospective injury because SB 1890 will restrict them from giving or receiving above the limit. *Cf. Citizens Against Rent Control*, 454 U.S. at 296 ("Freedom of association is diluted if it does not include the right to pool money through contributions, for funds are often essential if advocacy is to be truly or optimally effective." (cleaned up)). And

---

[2] All Defendants are sued in their official capacities. Although the Florida Elections Commission itself is not a party, for simplicity, this order will refer to the Defendant Commissioners collectively as the "Commission."

their injury is imminent now; they need not wait until the law is enforced against them. *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) ("In the First-Amendment realm, plaintiffs do not have to expose themselves to enforcement in order to challenge a law.").

Plaintiffs have also shown their prospective injury to be traceable to—and redressable by—the Commission. It is the Commission that would enforce the new law and impose penalties for violations, *see* Fla. Stat. § 106.25(1), so an injunction against the Commission would redress the injury. No party disputes any of this. Thus, Plaintiffs have standing to sue the Commission.[3]

That Plaintiffs have standing to sue the Commission, though, does not mean they can sue the Secretary. *Cf. Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("Standing is not dispensed in gross.") (cleaned up). The Secretary contends Plaintiffs lack standing to sue her because they have not shown any injury traceable to her or redressable by her.

---

[3] There is one wrinkle. The Commission has nine slots, Fla. Stat. § 106.24(1)(b), but currently just four members. Five are needed for a quorum, *id.* § 106.24(3), so the Commission is (today) unable to act. The Commission's counsel appropriately disclosed this but has not contested Plaintiffs' standing on this basis. The parties agree that another appointment (and thus a quorum) could be imminent, and under these circumstances, I conclude the current lack of a quorum does not deprive the court of jurisdiction. Plaintiffs have still "demonstrate[d] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

In arguing otherwise, Plaintiffs rely heavily on *Georgia Latino Alliance for Human Rights v. Governor of Georgia* (*GLAHR*), 691 F.3d 1250 (11th Cir. 2012). *See* ECF No. 29 at 3-8. But that case does not help them. The primary standing question in *GLAHR* was whether plaintiffs suffered injury. 691 F.3d at 1258-60. The court concluded they did, *id.*, just as I conclude Plaintiffs have demonstrated injury here. The court went on to find causation and redressability, explaining briefly that those requirements were "easily satisfied." *Id.* at 1260. Although the court noted in passing that the "injury is directly traceable to the passage of [the challenged provision] and would be redressed by enjoining each provision," *id.*, it did not disturb the settled principle that the injury must be traceable to and redressable *by the defendant*.

Here, Plaintiffs do not seek an injunction against the law; they seek an injunction against the Secretary (and the Commission). *Cf. Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (explaining that although "federal courts have no authority to erase a duly enacted law from the statute books," they can "enjoin executive officials from taking steps to enforce a statute"—but "only when the officials who enforce the challenged statute are properly made parties to a suit" (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018))). But the Secretary does not enforce the challenged statute; the Commission does. *See* Fla. Stat. § 106.25(1) ("Jurisdiction to investigate and

6

determine violations of this chapter [106] and chapter 104 is vested in the Florida Elections Commission.").

In their efforts to tie the Secretary to the law's enforcement, Plaintiffs offer arguments like those the Eleventh Circuit rejected in *Jacobson*.[4] The Secretary is not a proper defendant merely because she is the "head of the Department of State," Fla. Stat. § 20.10(1), which includes the "Division of Elections," *id.* § 20.10(2)(a). *See Jacobson*, 974 F.3d at 1254. She cannot dictate how the Commission enforces the law, just as she cannot dictate how county supervisors arrange ballots. *See id.* at 1253-54. And just as the county supervisors in *Jacobson* were independent officers, *id.*, the Commission is an independent agency. The Commission exists "within the Department of Legal Affairs, Office of the Attorney General"—not the Department of State; it is not subject to the control of the Department or Attorney General; and it has its own budget. Fla. Stat. § 106.24(1)(a).

Although the Division of Elections (under the Secretary's purview, Fla. Stat. § 20.10(2)(a)) may submit complaints to the Commission about campaign-finance violations, *id.* § 106.25(2), it is not alone in this regard. "Any person" with

---

[4] Plaintiffs attempt to distinguish *Lewis* and *Jacobson* because they involved post-enforcement action and this is a pre-enforcement challenge. ECF No. 29 at 4. But that is not a meaningful distinction. Whenever (or if ever) someone enforces SB 1890, it will not be the Secretary doing the enforcing. Whether pre-enforcement or otherwise, Plaintiffs must demonstrate redressability. And an injunction against the Secretary will not redress Plaintiffs' injury.

7

information about a violation can file a complaint with the Commission. *Id.* And to the extent Plaintiffs argue they are injured by the threat of an *investigation* by the Division (not prosecution or enforcement), they have not alleged—much less proven—this type of injury.

Plaintiffs also argue that because there was standing against the Secretary in *Let's Help Florida*, which involved a similar statute, there must be standing against the Secretary here too. ECF No. 29 at 14. Although in discussing jurisdiction the court said "defendants have the statutory duty to enforce the election code," *Let's Help Fla.*, 621 F.2d at 198, Florida law has since changed. In 1980, the Division did enforce the state's campaign-finance laws; now, the Commission does. *See* ECF No. 24 at 7; *see also* Ch. 97-13 at 3, Laws of Fla. ("[T]ransferring the Florida Elections Commission from the Department of State to the Department of Legal Affairs, Office of the Attorney General"; "vesting the commission with jurisdiction to investigate and determine violations of ch. 106").

To summarize, the Secretary would not enforce this law, which means she would not cause the injury, which means an injunction against her would not "significantly increase the likelihood that [Plaintiffs] would obtain relief that directly

8

redresses [their] injury." *Lewis*, 944 F.3d at 1301 (cleaned up). Plaintiffs therefore lack standing as to the Secretary, so the claims against her will be dismissed.[5]

### III.   PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.

In deciding whether a preliminary injunction is warranted, courts consider these familiar factors:

> (1) whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would disserve the public interest.

*Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). Having considered these factors, I conclude Plaintiffs have shown entitlement to preliminary injunctive relief against the Commission.

### A.   Plaintiffs Have Shown a Substantial Likelihood of Success on the Merits.

Some points are uncontested. First, contributions to political committees that advocate for ballot initiatives are "beyond question a very significant form of

---

[5] Two final points about the Secretary. First, because I will dismiss as to standing, I need not address the Secretary's separate argument about Eleventh Amendment immunity. *See Jacobson*, 974 F.3d at 1256 ("Because the [plaintiffs] lack standing . . . , we have no occasion to consider whether the Secretary is a proper defendant under *Ex parte Young*."). Second, even if I concluded Plaintiffs alleged facts to show standing (and I conclude they have not), I would not grant preliminary injunctive relief as to the Secretary because (i) Plaintiffs have not proven any prospective injury from her and (ii) relief against the Commission is sufficient, so Plaintiffs have not shown that an injunction against the Secretary is necessary to avoid irreparable harm.

political expression." *Citizens Against Rent Control*, 454 U.S. at 298; *see also Meyer v. Grant*, 486 U.S. 414, 421-22 (1988) ("[T]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'"). Second, the State bears the burden of justifying restrictions on political expression by advancing at least "a sufficiently important interest" that is "closely drawn to avoid unnecessary abridgment of associational freedoms." *Let's Help Fla.*, 621 F.2d at 199 (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)).[6]

Binding decisions from the United States Supreme Court and the Fifth Circuit applied those principles and concluded that the First Amendment forbids limitations like those SB 1890 imposes. These two decisions—*Citizens Against Rent Control* and *Let's Help Florida*—strongly support Plaintiffs' claim.

First, in *Let's Help Florida*, the Fifth Circuit affirmed this court's decision enjoining enforcement of a nearly identical statute. 621 F.2d at 199, 201. This Fifth

---

[6] When it comes to contribution limits the "less rigorous standard" of "closely drawn" or exacting scrutiny from *Buckley* generally applies. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 137 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). Because I conclude the Commission's articulated interest does not survive exacting scrutiny, it would also fail the more rigorous strict scrutiny. Plaintiffs have thus shown a substantial likelihood of success on the merits regardless of which standard applies. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 199 (2014) (plurality) (concluding that the Court "need not parse the differences between the two standards" when the "limits fail even under the 'closely drawn' test").

Circuit decision is now binding Eleventh Circuit precedent. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981). The law at issue there—like SB 1890 here—limited to $3,000 contributions "[t]o any political committee in support of, or in opposition to, an issue to be voted on in a statewide election." *Let's Help Fla.*, 621 F.2d at 197. The court concluded that this implicated important First Amendment rights and that the State was unable to justify its restriction on expression. *See id.* at 199-200 (noting that the "state's interest in preventing the actual or apparent corruption of candidates . . . does not justify restrictions upon political contributions in referendum elections").

      The year after *Let's Help Florida* issued, the United States Supreme Court decided *Citizens Against Rent Control*, which likewise invalidated a cap on contributions to political committees sponsoring ballot initiatives. 454 U.S. at 300. In rejecting the limit, the Court found "no significant state or public interest in curtailing debate and discussion of a ballot measure." *Id.* at 299. It concluded that "[p]lacing limits on contributions which in turn limit expenditures plainly impairs freedom of expression." *Id.* The Court rejected the assertion that an interest in preventing corruption justified the restriction, *id.* at 297-98 (citing *Let's Help Florida*), and it found any informational interest "insubstantial," *id.* at 298-99.

      These binding cases present significant obstacles for the Commission, which could not meaningfully distinguish them. First, the Commission notes that the limit

11

in *Citizens Against Rent Control* was just $250, far less than SB 1890's $3,000 cap, even considering inflation. ECF No. 26 at 9. But nothing in *Citizens Against Rent Control* suggested a higher figure could salvage the restriction. Again, the Court explained that there was "no significant state or public interest" in limiting the debate. 454 U.S. at 299. (The Court distinguished this from limits on contributions to *candidates*, which can serve the interest of preventing *quid pro quo* corruption. *Id.* at 297-98.) Regardless, even if the lower cap meaningfully distinguished that case, the *Let's Help Florida* decision—which is binding too—invalidated a $3,000 limit that (inflation adjusted) exceeds SB 1890's.

Second, the Commission notes that SB 1890 limits contributions only to the point when a committee secures ballot placement. ECF No. 26 at 9; *see* Ch. 21-16, § 1, at 1, Laws of Fla. ("[T]he limitation on contributions to such political committees no longer applies once the Secretary of State has issued a certificate of ballot position . . . ."). It is unclear, though, why this would matter for First Amendment purposes. Nothing in *Citizens Against Rent Control* or *Let's Help Florida* suggested that states could restrict speech and expression surrounding ballot initiatives so long as the restriction covered only part of the initiative process. *Cf. Worley v. Roberts*, 749 F. Supp. 2d 1321, 1328-29 (N.D. Fla. 2010) (enjoining law that limited contributions only in the last five days before an election). And to the extent the Commission argues this makes the law more closely drawn (or narrowly

tailored), there still must be a sufficiently important government interest in the first place.

Third, the Secretary notes that *Citizens Against Rent Control* "involved ballot measures to enact municipal ordinances, not initiatives to alter the constitutional framework of the state." ECF No. 26 at 9. But this is not a useful distinction either. That speech might advance more (or more significant) change is not a basis to restrict it. And at any rate, the law in *Let's Help Florida*—like SB 1890—dealt with restrictions as to state constitutional amendments. 621 F.2d at 197.

Beyond attempting to distinguish *Let's Help Florida* and *Citizens Against Rent Control*, the Commission contends the law supports a significant government interest:

> [T]his cap allows potential signatories (i.e., registered voters), who might be asked to lend their signatures to an initiative petition during the interactive in-person signature-gathering phase, to have assurance that the funding for the initiative is provided by many donors at no more than $3,000 each, and that the significant funding needed for a successful initiative petition has not been provided by a small handful, or even a single, very well-heeled special interest donor.

ECF No. 26 at 8; *accord id.* at 4. But the Commission has not shown a sufficiently important interest in ensuring that sponsors have broad financial support, rather than fewer, bigger contributors. *Cf., e.g.*, *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (plurality) ("[W]e have made clear that Congress may not regulate contributions simply to reduce the amount of money in politics, or to restrict the

13

political participation of some in order to enhance the relative influence of others."); *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 790-91 (1978) ("[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment." (quoting *Buckley*, 424 U.S. at 48-49)); *Scott*, 612 F.3d at 1290-93 (finding the plaintiff likely to succeed on the merits when a Florida law created an "advantage [for] candidates with little money" while burdening those with more); *cf. also Meyer*, 486 U.S. at 425-26 (rejecting argument "that the prohibition is justified by [the State's] interest in making sure that an initiative has sufficient grass roots support" and noting that "the State has failed to demonstrate that it is necessary to burden appellees' ability to communicate their message in order to meet its concerns").

In short, the State has no significant interest in limiting speech of political committees with fewer (but bigger) contributors. Indeed, even when it comes to limits on contributions to *candidates*, the only significant interest the Supreme Court has found is to avoid corruption (or the perception of it), which is not at issue here. *Bellotti*, 435 U.S. at 790 ("Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue." (citation omitted)); *see also McCutcheon*, 572 U.S. at 191.

14

Because the Commission identifies no sufficiently important government interest to support SB 1890, I conclude Plaintiffs are likely to succeed on the merits.

### B. Plaintiffs Have Shown Irreparable Harm.

As explained above, SB 1890 restricts First Amendment speech and association. "[H]arms to speech rights for even minimal periods of time, unquestionably constitute irreparable injury supporting preliminary relief." *Scott*, 612 F.3d at 1295 (cleaned up). So Plaintiffs have shown they will suffer irreparable harm absent injunctive relief.

The Commission suggests that even with SB 1890's limits, the political committee plaintiffs may be able to secure ballot placement—if not by 2022, then by 2024. In other words, they may be able to achieve their goals despite the contribution limit. But the contributions themselves are "beyond question a very significant form of political expression." *Citizens Against Rent Control*, 454 U.S. at 298. SB 1890 will limit that political expression, so Plaintiffs will suffer injury whether the political committees secure ballot placement or not.

### C. The Balance of Harms and the Public Interest Favor Plaintiffs.

The last two considerations are a balancing of the harms and the public interest. *Scott*, 612 F.3d at 1290. When the State is the defendant, these last "considerations are largely the same." *Id.*

15

It is true that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). But in this instance, having found that the State has no sufficient interest to restrict First Amendment expression, the balance nonetheless favors Plaintiffs. Moreover, as the Eleventh Circuit has said, there is "no [public] interest in enforcing an unconstitutional law." *Scott*, 612 F.3d at 1297. In short, Plaintiffs have met their burden as to these factors too.

### IV.  CONCLUSION

1.   The Secretary's motion to dismiss, ECF No. 24, is GRANTED. Plaintiffs' claims against the Secretary are dismissed without prejudice for lack of subject-matter jurisdiction.[7]

2.   Plaintiffs' motion for a preliminary injunction against the Secretary, ECF No. 10, is DENIED.

3.   Plaintiffs' motion for a preliminary injunction against the Commission, ECF No. 17, is GRANTED.

---

[7] The Secretary seeks dismissal with prejudice, ECF No. 24 at 11, but a jurisdictional dismissal is not a judgment on the merits and is without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

4. The Defendant Commissioners must not enforce against Plaintiffs the provision of SB 1890 limiting contributions "to a political committee that is the sponsor of or is in opposition to a constitutional amendment proposed by initiative." Ch. 21-16, § 1, at 1, Laws of Fla.

5. This injunction binds the Defendant Commissioners and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

6. This injunction is effective immediately, without the posting of security, but the Defendant Commissioners may seek an order requiring the posting of security.

7. This injunction will remain in effect until the entry of a final judgment or until otherwise ordered.

8. A scheduling order will issue separately.

SO ORDERED on July 1, 2021.

s/ *Allen Winsor*
United States District Judge