IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**THE AMERICAN CIVIL LIBERTIES
UNION OF FLORIDA, INC., et al.,**

    **Plaintiffs,**

v.                                                      Case No. 4:21-cv-190-AW-MJF

**CORD BYRD, in his official capacity as
FLORIDA SECRETARY OF STATE,
and the FLORIDA ELECTIONS
COMMISSION,**

    **Defendants.**

_____/

**ORDER GRANTING SUMMARY JUDGMENT
AND PERMANENT INJUNCTION**

A Florida Statute prohibits any "person or political committee" from donating more than $3,000 "to a political committee that is the sponsor of or is in opposition to a constitutional amendment proposed by initiative." Fla. Stat. § 106.08(1)(a)1. The issue in this case is whether that law comports with the First Amendment. The ACLU of Florida, together with several political committees—Fair Vote Florida, Our Votes Matter, and Florida Votes Matter (collectively, the Committee Plaintiffs)—sued Florida's Elections Commission (FEC) and Secretary of State, contending that it does not. ECF No. 53 (TAC) ¶ 1. I dismissed the claims against the Secretary for lack of standing. ECF No. 38 at 9, 16. But I granted a preliminary injunction against the FEC, concluding that Plaintiffs were likely to succeed on the

1

merits and that an injunction was otherwise appropriate. *Id*. at 15-16. That preliminary injunction remains in place.

Plaintiffs have now moved for summary judgment, seeking a permanent injunction. ECF No. 41. The FEC has responded in opposition. ECF No. 60. In the meantime, the Legislature revised the statute (effective July 1, 2022), allowing unlimited contributions from Florida residents and political committees with Florida addresses. *See* H.B. 921, 27th Leg., 2d Reg. Sess. (Fla. 2022) (enacted at 2022 Fla. Sess. Law Serv. Ch. 2022-56).

Having carefully considered both sides' arguments, including supplemental briefing addressing the statutory amendment, I now grant Plaintiffs' motion.

**I.**

The FEC opposes summary judgment on jurisdictional and substantive grounds. Jurisdictionally, it argues that the Committee Plaintiffs lack standing because they've withdrawn their ballot initiative petitions for 2022. ECF No. 60 at 6-7. On the merits, the FEC defends the law as a reasonable anti-fraud provision. *See id.* at 19. I address each in turn.

**A.**

First, the FEC suggests that Plaintiffs lack standing. Although the FEC does little to develop this argument, federal courts must consider their own jurisdiction whether the parties raise it or not. *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003).

To maintain an action in federal court, a plaintiff must show—for each claim—that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016)). It is Plaintiffs' burden to show standing, and they must meet their burden at every stage of the litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

At the preliminary injunction stage, I concluded Plaintiffs had standing to sue the FEC. ECF No. 38 at 4-5. But the FEC notes that things have changed: "it appears that currently none of the Committee Plaintiffs is a sponsor of any constitutional amendment proposed by ballot initiative." ECF No. 60 at 7. Thus, the FEC contends, "Plaintiffs' standing is now squarely at issue." *Id.*

Standing "depends on the facts *as they exist when the complaint is filed.*" *Lujan*, 504 U.S. at 569 n.4 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)); *accord Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed."). And Plaintiffs have shown that when they sued, they had a cognizable injury. More specifically, the undisputed evidence shows a non-speculative likelihood that, without § 106.08, Fair Vote Florida would receive contributions exceeding $3,000. *See* Fla. Stat. § 106.08(7)

3

(imposing criminal penalties on a "person who knowingly and willfully makes *or accepts*" donations that violate § 106.08(1) (emphasis added)); *see also* ECF No. 41-2 at 7:13-16 ("[W]e generally do raise larger amounts more than $3,000."); *id.* at 10:14-16 ("The donors that we work with, the donors that gives [*sic*] to the campaign tend to give the large amounts."). They showed too that this injury flows directly from § 106.08, and that an order enjoining the statute's enforcement would redress that injury. Fair Vote Florida has standing.

The ACLU has standing too. It has offered unrebutted evidence that § 106.08 prevented it from offering greater in-kind and cash contributions to Fair Vote Florida and other Committee Plaintiffs than it otherwise would. *See* ECF No. 41-2 at 14:6-13. The other two Committee Plaintiffs may have had standing also, but when multiple plaintiffs seek injunctive relief, only one needs to show standing. *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) (citations omitted). Here, at least two plaintiffs have.

Having standing at the outset does not guarantee, though, that the court's jurisdiction will continue. Intervening events can sometimes moot a plaintiff's claim, eliminating Article III jurisdiction. Although the Supreme Court has referred to mootness as "standing set in a time frame," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)), it has also recognized the description "is

not comprehensive" and that mootness and standing are different, *id.* One important difference is that plaintiffs have the burden to show standing, but defendants have the burden to show mootness. *Id.* And because of the difference between the two, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* at 190.

"As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012)). Here, Fair Vote Florida is still subject to § 106.08's effects because there's a realistic likelihood that, but for § 106.08, it would receive contributions larger than $3,000. *See* ECF No. 41-2 at 7:13-16; *id.* at 10:14-16. Likewise, the unrebutted evidence shows that § 106.08 prevents the ACLU from offering greater in-kind contributions to Fair Vote Florida than it otherwise would. *See id.* at 14:6-13. Further, although Plaintiffs have shifted course from their initial 2022 ballot initiative plans, the unrebutted evidence shows they still intend to seek 2024 ballot placement. *See* ECF No. 63-1 ¶¶ 3, 10. In fact, Fair Vote Florida has submitted an identical initiative for 2024 ballot placement, *id.* ¶¶ 3, 13, 17, meaning it is pursuing the same ballot initiative and facing the same statutory restriction it faced at the start. These undisputed facts make it clear that Plaintiffs have at least some interest in the case's

5

outcome. *Cf. Chafin*, 568 U.S. at 175 (explaining that a case is not moot just because "the practical impact of any decision is not assured"). Accordingly, Plaintiffs' claims are not now moot. I will therefore turn to the merits.

**B.**

*1.*

The First Amendment secures "[t]he right to participate in democracy through political contributions." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (plurality). This includes contributions to political committees that support ballot initiatives—contributions that are "beyond question a very significant form of political expression." *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 298 (1981).

As I noted at the preliminary injunction stage, two binding precedents are directly applicable here:

> Binding decisions from the United States Supreme Court and the Fifth Circuit applied those principles and concluded that the First Amendment forbids limitations like those SB 1890 imposes. These two decisions—*Citizens Against Rent Control* and *Let's Help Florida* [*v. McCrary*, 621 F.2d 195 (5th Cir. 1980), *aff'd sub nom. Firestone v. Let's Help Fla.*, 454 U.S. 1130 (1982)]—strongly support Plaintiffs' claim.
>
> First, in *Let's Help Florida*, the Fifth Circuit affirmed this court's decision enjoining enforcement of a nearly identical statute. 621 F.2d at 199, 201. This Fifth Circuit decision is now binding Eleventh Circuit precedent. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981). The law at issue there—like SB 1890 here—limited to $3,000 contributions "[t]o any political committee in support of, or in

6

>opposition to, an issue to be voted on in a statewide election." *Let's Help Fla.*, 621 F.2d at 197. The court concluded that this implicated important First Amendment rights and that the State was unable to justify its restriction on expression. *See id.* at 199-200 (noting that the "state's interest in preventing the actual or apparent corruption of candidates . . . does not justify restrictions upon political contributions in referendum elections").
>
>The year after *Let's Help Florida* issued, the United States Supreme Court decided *Citizens Against Rent Control*, which likewise invalidated a cap on contributions to political committees sponsoring ballot initiatives. 454 U.S. at 300. In rejecting the limit, the Court found "no significant state or public interest in curtailing debate and discussion of a ballot measure." *Id.* at 299. It concluded that "[p]lacing limits on contributions which in turn limit expenditures plainly impairs freedom of expression." *Id.* The Court rejected the assertion that an interest in preventing corruption justified the restriction, *id.* at 297-98 (citing *Let's Help Florida*), and it found any informational interest "insubstantial," *id.* at 298-99.

ECF No. 38 at 10-11. Those cases kept the FEC from prevailing before, and they keep the FEC from prevailing now.

The FEC acknowledges that some legitimate state interest must support the restriction. It argues that the State has an interest in avoiding fraud and corruption and protecting the rights of voters whose signatures are forged on fraudulent petitions. *See, e.g.*, ECF No. 60 at 2-3. To support its position, it has assembled a record of fraud that it did not have at the preliminary injunction stage. *See* ECF No. 59. And to be sure, the FEC has shown—particularly viewing the evidence in its favor, as I must at this stage, *see Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001)—that fraud is no stranger to Florida's initiative process. For

7

example, the FEC submitted evidence that officials rejected over 400 petitions tracing back to a single paid, out-of-state petition gatherer. *See* ECF No. 59-1 at 1-10. Other evidence showed another paid petition gatherer filled out nearly three dozen fraudulent petitions, forging the names of Florida citizens. ECF No. 59-7 at 62-99. These are just a few examples from the FEC's 2,500-page appendix. *See generally* ECF No. 59.

But this evidence, however troubling, does not legally justify the restriction at issue. To start, the Supreme Court has never found the threat of fraud or corruption to justify a limit on contributions relating to ballot initiatives—as opposed to contributions to candidates. "Th[e] Court has recognized only one permissible ground for restricting political speech: the prevention of '*quid pro quo*' corruption or its appearance." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1652 (2022) (quoting *McCutcheon*, 572 U.S. at 207 (plurality)).[1] "Whatever may be the state interest or degree of that interest in regulating and limiting contributions to or expenditures of a candidate or a candidate's committees there is no significant state or public interest in curtailing debate and discussion of a ballot measure." *Citizens*

---

[1] The Court explained that it has "consistently rejected attempts to restrict campaign speech based on other legislative aims," such as "reduc[ing] the amount of money in politics," "level[ing] electoral opportunities by equalizing candidate resources," or "limit[ing] the general influence a contributor may have over an elected official." *Cruz*, 142 S. Ct. at 1652 (citations omitted).

*Against Rent Control*, 454 U.S. at 299; *accord First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 790-91 (1978) ("Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue." (citations omitted)); *see also McCutcheon*, 572 U.S. at 191 (plurality) (explaining that "Congress may regulate campaign contributions to protect against corruption or the appearance of corruption," but not "simply to reduce the amount of money in politics, or to restrict the political participation of some in order to enhance the relative influence of others").[2]

Admittedly, I cannot say that the Court would *never* recognize such an interest. In *Citizens Against Rent Control*, for example, the Court noted that "the record *in this case* does not support the California Supreme Court's conclusion that [the law] is needed to preserve voters' confidence in the ballot measure process." 454 U.S. at 299 (emphasis added); *see also Bellotti*, 435 U.S. at 789-90 (noting that "there has been no showing that the relative voice of corporations has been overwhelming or even significant in influencing referenda in Massachusetts, or that

---

[2] The FEC also argues that, when petitions are forged, the citizens whose names are used are "deprived of their Constitutional right to refrain from signing a ballot petition." ECF No. 60 at 22. This is consistent with the State's overall asserted anti-fraud justification, but it does not separately justify the law. A criminal's forgery does not implicate the victim's First Amendment right not to speak.

9

there has been any threat to the confidence of the citizenry in government" (footnote and citation omitted)); *cf. also* ECF No. 60 at 31 (arguing that "[t]he recent discovery of 1800 pages of voter theft and petition fraud has fundamentally altered the core factual premise underlying *McCrary* and *Citizens Against Rent Control*"). Perhaps in some case there might be an anti-fraud interest that warrants some intrusion on First Amendment expression. But either way, Florida's law would not survive.

This is because a restriction must not only be justified by a sufficient state interest but also be "closely drawn to avoid unnecessary abridgment of associational freedoms." *Let's Help Fla.*, 621 F.2d at 199 (quoting *Buckley v. Valeo*, 421 U.S. 1, 25 (1976)).[3] This means there must be a "fit between the stated governmental objective and the means selected to achieve that objective." *Ala. Democratic Conf. v. Att'y Gen.*, 838 F.3d 1057, 1069 (11th Cir. 2016) (quoting *McCutcheon*, 572 U.S. at 199 (plurality)). Here, there is no decent fit between the restriction and the asserted anti-fraud purpose.

---

[3] As in my earlier order, I assume that the "closely drawn" standard applies rather than strict scrutiny. *See McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 137 (2003), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). Section 106.08 would fail under either standard, so I "need not parse the differences between the two." *McCutcheon*, 572 U.S. at 199 (plurality); *see also Cruz*, 142 S. Ct. at 1652 (declining to choose which standard applies (citing *McCutcheon*, 572 U.S. at 210 (plurality))).

For one, the FEC shows no clear connection between large individual contributions and fraud. In the FEC's view, the fraud illustrates how Florida's ballot-initiative process is susceptible to the influence of large donors who fund petition gatherers, who in turn have incentives to falsify petition signatures. *See* ECF No. 60 at 2; *see also generally* ECF No. 59. But the FEC offers no reason to think that large individual contributions—as opposed to large *aggregate* contributions—are to blame for this dynamic.[4] A political committee that spends $1 million to pay petition gatherers is not more likely to incentivize fraudulent petition gathering because it raised that $1 million from a few individuals rather than from many. Moreover, even if there were a connection between large individual contributions and fraud, the FEC also has not shown that the *type* of contributor matters. Yet the law exempts contributions from political parties and affiliated party committees, whose contributions would seemingly give paid gatherers the same incentives as contributions from others. Fla. Stat. § 106.08(1)(a).[5]

---

[4] The FEC has not cited anything in its voluminous appendix (ECF No. 59-1) connecting fraud with large individual contributions. I decline to consider record materials not pinpoint cited in the parties' briefs and not addressed in this order. *See* Fed. R. Civ. P. 56(c)(3); N.D. Fla. Loc. R. 56.1(F).

[5] The FEC argues that the contribution limit's narrow time frame—it only applies until a political committee obtains ballot placement, Fla. Stat. § 106.08(1)(a)1—means it is closely drawn. *See* ECF No. 60 at 21, 32. This does at least show some relationship between petition gathering and fundraising. But it still does not make the law a good fit for the reasons explained above.

11

In addition, the FEC does not explain why Florida's other anti-fraud measures—including those that enabled the State to identify the attempted fraud in the FEC's exhibits—are insufficient to protect electoral integrity. *Cf. Cruz*, 142 S. Ct. at 1652 (noting that "a prophylaxis-upon-prophylaxis approach . . . is a significant indicator that the regulation may not be necessary for the interest it seeks to protect"); *see also* ECF No. 63 at 10-11 (identifying Florida's anti-fraud provisions). That means, in short, the FEC has not shown that § 106.08 is closely drawn to minimize infringements on First Amendment rights. *See Let's Help Fla.*, 621 F.2d at 199 (citing *Buckley*, 421 U.S. at 25).

2.

The undisputed evidence also shows that Plaintiffs have satisfied all the factors necessary for a permanent injunction: (1) an irreparable injury, (2) the lack of an adequate remedy at law, (3) that the balance of hardships favors an injunction, and (4) that the injunction is consistent with the public interest. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

There is irreparable harm whenever First Amendment rights are curtailed. *See Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). Plaintiffs' injury will continue so long as the FEC may enforce the contribution limit. *See Thomas v. Bryant*, 614 F.3d 1288, 1318-19 (11th Cir. 2010). And Plaintiffs lack an adequate remedy at law in this circumstance. *See Let's Help Fla.*, 621 F.2d at 199.

The last two factors—balance of hardships and the public interest—"are largely the same" when the State is the defendant. *Scott*, 612 F.3d at 1290 (citation omitted). The State suffers no harm when a court precludes it from violating the Constitution—"its interest and harm merge with the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Scott*, 612 F.3d at 1297 (noting there is "no [public] interest in enforcing an unconstitutional law") (citation omitted).

### C.

That leaves one complicating factor. The Florida Legislature enacted a new law—not effective until July 1—modifying § 106.08 to limit its reach: "This limitation applies only to persons who are not residents of the state and to political committees that have not registered an office under this chapter using a street address located within the state." *See* H.B. 921, 2022 Leg., Reg. Sess. (Fla. 2022) (enacted at 2022 Fla. Sess. Law Serv. Ch. 2022-56). The parties submitted supplemental briefing on the new law's effects. ECF Nos. 66, 68, 69, 70. Plaintiffs contend that the amendment does nothing to eliminate their injury. ECF No. 66 at 4. The FEC, on the other hand, argues that the amendment will eliminate standing and moot the case. ECF No. 68 at 4-5. It also argues that the amendment further strengthens the State's interest in restricting speech. *See id.* at 7; ECF No. 69 at 3.

*1.*

As noted above, standing is determined at the lawsuit's inception. And the amendment will not moot this challenge. "[A] superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law." *Coral Springs Street Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1342-43 (11th Cir. 2004) (quoting *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992) (allowing claim for injunctive relief to proceed against new law where "the challenged aspects" of the law "remain[ed] essentially as they were before the amendments")). On the other hand, when "changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." *Id.* (quoting *Fillyaw*); *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (warning that a defendant cannot "moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant aspect"). That is the situation here.

Even assuming the amendment will alleviate the ACLU's injury,[6] it will not end Fair Vote Florida's. *See Powell v. McCormack*, 395 U.S. 486, 497 (1969)

---

[6] The ACLU is incorporated in Florida, so when the amendment becomes effective, it may make unlimited contributions to amendment sponsors. But even if it is no longer injured, that will not moot the whole case. *Cf. Georgia Latino Alliance for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1258 (11th Cir. 2012).

14

("Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy."). The amended law will still bar Fair Vote Florida from receiving donations exceeding $3,000 from non-Floridians. *See* Fla. Stat. § 106.08(7) (establishing criminal penalties for "[a]ny person who knowingly and willfully makes *or accepts*" a contribution that violates § 106.08(1) (emphasis added)); *see also* ECF No. 66 at 5-6. The FEC contends that Fair Vote Florida's injuries are only speculative since Fair Vote Florida may not pursue a future ballot initiative and may not receive large out-of-state contributions. ECF No. 69 at 5-6. But the undisputed record evidence shows a substantial likelihood that Fair Vote Florida will, in fact, pursue a ballot initiative for 2024. *See* ECF No. 63-1 ¶ 13; *cf. Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020) (explaining that case is not moot where a "substantial likelihood" exists that government will continue allegedly harmful conduct in the future (quoting *Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009))). The record also shows that—without § 106.08—Fair Vote Florida would solicit and receive contributions greater than $3,000 from out-of-state donors. *See* ECF No. 23 ¶¶ 6-9.

In sum, the amendment (assuming it takes effect as scheduled) will not moot the case or eliminate the need for injunctive relief. This does not preclude, of course, the FEC's seeking to vacate the injunction if the relief later becomes unnecessary.

2.

The FEC separately argues that the amendment will strengthen the State's interest in restricting speech. It argues that, because the new contribution cap will only apply to non-Floridians, the law now furthers Florida's interest in ensuring that only Florida voters have a say in Florida's laws. ECF No. 68 at 9-10. But, again, the FEC cannot demonstrate that this is a legitimate state interest. As explained above, the Supreme Court has only recognized one interest sufficient to justify limiting campaign contributions: "the prevention of '*quid pro quo*' corruption or its appearance" in campaigns run by individual candidates. *Cruz*, 142 S. Ct. at 1652; *see also McCutcheon*, 572 U.S. at 191 (plurality).

If anything, the amendment undermines the asserted interest in preventing fraud. The FEC has argued that § 106.08 is important to curb the incentives that "big money" has in facilitating fraud. *See* ECF No. 60 at 3, 4, 23. But the amendment will allow unlimited contributions to political committees that support ballot initiatives, so long as the money comes from Floridians. This will only undermine any suggestion that there is an adequate "fit" between the law and the asserted interest.

In short, the parties have not shown that the new law will change anything, so it provides no basis to deny the requested relief. This order will enjoin the FEC from

enforcing the contribution limit against Plaintiffs as to donations to political committees that sponsor a ballot initiative.[7]

## CONCLUSION

1. Plaintiffs' Motion for Summary Judgment, for a declaratory judgment, and for a permanent injunction (ECF No. 41) is GRANTED.

2. The Florida Elections Commission is now PERMANENTLY ENJOINED from enforcing against Plaintiffs the provision of Fla. Stat. § 106.08(1)(a)1 limiting contributions to a political committee that is the sponsor of a constitutional amendment initiative.

3. This injunction binds Defendant Florida Elections Commission and its officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

4. The clerk will enter a judgment that says, "The claims against the Secretary of State were dismissed for lack of jurisdiction. The remaining claims were

---

[7] The contribution limit prohibits large donations "to a political committee that is the sponsor of *or is in opposition to*" a ballot initiative. *See* Fla. Stat. § 106.08(1)(a)1 (emphasis added); *see also* H.B. 921 § 1 (same). But Plaintiffs have not challenged the "is in opposition to" language, and the parties agree that the court does not need to address it. *See* ECF No. 41 at 2 n.1; *see also* ECF No. 60 at 6. Although my analysis of that clause would be the same as in this order, I will not enjoin its enforcement here. *See Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003) ("Injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." (citations omitted)).

resolved at summary judgment. The Florida Elections Commission and its agents are permanently enjoined from enforcing § 106.08(1)(a)1 against Plaintiffs, to the extent that provision limits contributions to a political committee that is the sponsor of a constitutional amendment initiative."

5. The clerk will then close the file.

SO ORDERED on June 15, 2022.

            s/ *Allen Winsor*
            United States District Judge